STUART D. PERLMAN AND AVIS R. PERLMAN, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. Perlman v. Commissioner
Docket Nos. 1459-81, 24760-81, 1556-82.
United States Tax Court
T.C. Memo 1983-166; 1983 Tax Ct. Memo LEXIS 619; 45 T.C.M. (CCH) 1100; T.C.M. (RIA) 83166; March 29, 1983. Stuart D. Perlman, for the petitioners. David D. Baier, for the respondent. HAMBLEN
MEMORANDUM OPINION HAMBLEN, Judge: These cases are before the Court on respondent's motion for partial summary judgment pursuant to Rule 121. [2] Respondent determined deficiencies in petitioners' joint Federal income taxes as follows: Docket Nos.
Taxable Year Ended
Amount of Deficiency
1459-81
December 31, 1975
$8,359.46
1556-82
December 31, 1976
6,900.00
24760-81
December 31, 1977
2,816.00
*620 The only issue for determination on the present motion is whether a partnership in which petitioner Stuart D. Perlman was a partner is entitled to deductions for depreciation under section 167 with respect to a motion picture entitled "Mitchell." Petitioners Perlman, husband and wife, resided in Skokie, Illinois, when they filed their petitions in this case and when they timely filed their 1975 and 1976 joint Federal income tax returns with the Internal Revenue Service Center, Kansas City, Missouri. Petitioners Gore, husband and wife, resided in Chicago, Illinois, when they filed their petition in this case and when they timely filed their 1977 joint Federal income tax return with the Internal Revenue Center, Kansas City, Missouri. Petitioner Stuart D. Perlman is the general partner of the Mitchell Film Company, an Illinois partnership (hereinafter, the "Partnership"). In May of 1975, the Partnership purchased from Essex Enterprises, Ltd. all right, title, and interest including, but not limited to, the copyright of a motion picutre entitled "Mitchell". The Partnership acquired this property by making a cash payment of $1,162,500.00 The film enjoyed an experienced director *621 and a cast which included several well-known American actors. Its distribution rights in the United States and various other areas of the world were held by Allied Artists Picture Corporation (hereinafter "Allied"). Subsequent to the Partnership's acquisition of the ownership of "Mitchell," Allied distributed the film. It was exhibited in several thousand theaters throughout the United States, later appeared on network television, and was reported also to have been exhibited in theaters throughout various areas of the world. Due to these exposures, "Mitchell" produced cumulative revenues of $701,371.00, $1,056,118.00, and $1,432,511.00 [3] during 1975, 1976, and 1977 respectively. However, no portion of these revenues was ever paid by Allied to the Partnership. In 1979, Allied filed for bankruptcy under Chapter XI of the Federal Bankruptcy Act. The Partnership employed the cash method of accounting during the years in issue. *622 On its 1975, 1976, and 1977 returns, the Partnership claimed deductions for depreciation in the amounts of $543,469.00, $275,022.00, and $122,789.00, respectively. The amounts of these deductions were computed under the income forecast method authorized by Rev. Rul. 60-358, 1960-2 C.B. 68, amplified by Rev. Rul. 64-273, 1964-2 C.B. 62. Under this method, depreciation under section 167 is calculated by multiplying the property's basis for depreciation by a fraction. The numerator of this fraction is the income derived from the property during the taxable year, and the denominator is the estimated total income to be derived from the property. In making its depreciation calculations, the Partnership used as the numerators of their fraction the revenues reported each year by Allied and used as the denominator the total income estimate of $1,500,000.00 Respondent disallowed these deductions for depreciation, asserting that the correct numerator to be used in each year's calculation is zero. It is respondent's position that, where a partnership has received no income, it cannot claim a depreciation deduction under the income forecast method and, as a result, *623 the deductions which flow through the partnership to its partners are not allowable. The parties now agree that the Partnership received no income during any of the taxable years in issue. [4] Therefore, the correct numerator to be used in the fraction for each year is zero. By application of these zero-numerator fractions to the property's basis for depreciation, the Partnership is not entitled to any depreciation deductions under the income forecast method of computation. Siegel v. Commissioner,78 T.C. 659, 692-693 (1982); Wildman v. Commissioner,78 T.C. 943, 950-951 (1982). The Partnership having no allowable deductions for depreciation, none flow through the Partnership to the petitioners. Accordingly, we find that, with respect to this issue, there is no genuine issue as to any material fact, and that summary judgment for the respondent may be granted as a matter of law. Rule 121(b). We have considered petitioners' other arguments and find them unpersuasive. *624 To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. Cases of the following petitioners are consolidated herewith for trial, briefing, and opinion pursuant to an order of this Court dated January 4, 1983: Jerome S. Gore and Shirley F. Gore, Docket No. 24760-81, and Stuart D. Perlman and Avis R. Perlman, Docket No. 1556-82.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue.↩
3. The 1977 amount of $1,432,511.00 has been disputed by the Partnership, and the correct amount may actually be $1,532,473.00. Resolution of this dispute, however, is not before this Court and is irrelevant to our determination of the instant case.↩
4. Petitioners had argued that the Partnership was entitled to use the Allied income as numerators because such income was constructively received by the Partnership, although not distributed to it. Such argument misapplies the doctorine of constructive receipt in that it fails to recognize that the "basis of constructive receipt is essentially unfettered control by the recipient over the date of actual receipt." Hornung v. Commissioner,47 T.C. 428, 434 (1967); see sec. 1.451-2, Income Tax Regs.↩ In any event, the issue is moot, petitioners having conceded at the hearing of January 17, 1983 that the Partnership had no constructive receipt "[i]n the context of the Code."